CARTWRIGHT *v.* STATE.

(*Knoxville*, September Term, 1949.)

(May Session, 1950.)

Opinion filed June 9, 1950.

544

Virgil Carmichael, of Cleveland, for plaintiff in error.

Nat Tipton, Assistant Attorney General, for the State.

Mr. Justice Tomlinson delivered the opinion of the Court.

This is an appeal from a conviction of unlawfully possessing whiskey with punishment fixed at a fine of $100 and a suspended jail sentence of six months. Reversal is sought on the theory that the finding of this whiskey in Cartwright's home was the result of an unlawful search.

A constable of Bradley County, introduced as a witness for the State, testified that on a specified date he received a complaint that defendant was at his home in Cleveland "drunk and disturbing the neighbors". He took no action in response to this complaint and received the same complaint on the next day. Thereupon, in company with another officer they proceeded to the home of Cartwright and took their position in the public road at a place which concealed them from the view of Cart-

wright's home. This witness then heard "loud, drunken talk and cursing come from defendant's house". He and his companion officer thereupon entered without knocking and found the defendant and one Herb Flowers in the room drunk. Thereupon, "I looked in the back or South part of the room, and there I found . . .".

At this point Cartwright's attorney objected to any evidence as to what this witness found in the house, the objection being on the ground that the entry and search was unlawful. In the absence of the jury this witness repeated in response to the query of the Court that while he and his fellow officer were standing in the public road he "could hear cursing and loud talk" coming from this residence. Thereupon, the Court admitted this evidence over the objection and exception of Cartwright's attorney.

The testimony of the witness before the jury then continued as follows: "I proceeded into the back part of the room, and there I found an empty gallon jug. I looked into a paper sack which was sitting by the empty jug, and there I found a gallon jug that was nearly full of white whiskey. It looked like about a pint short of a full gallon. . . . I went back in the back part of the room and found the whiskey. . . . just before I entered the door I smelled a strong odor of whiskey coming from the house. I was already on the premises—on the porch when I smelled this odor."

It is conceded that the officers had no warrant for the arrest of Cartwright, nor a search warrant. The question is whether the search detailed by the officers was lawful.

When these officers started to the home of Cartwright after the second complaint they knew that the

criminal offense as to which complaint had twice been made to them was being committed, if at all, in the home of Cartwright, and that if they did anything about it they would have to invade that private home. A criminal warrant for the offense they were informed was being committed should have been obtained before going down there as, ordinarily, the invasion of a private home without a warrant is abhorrent to the law and to the instincts of our people. That neglect, however, does not seem to be fatal under the facts of this case.

As these officers stood in the public road opposite this home they heard "loud drunken talk and cursing come from defendant's house". The fact of Cartwright being drunk in his home did not warrant the invasion of that home, since it was not public drunkenness.

But in addition there was the "loud drunken talk and cursing", and that conduct had annoyed the neighbors as evidenced by the fact that it was twice reported to these officers. This profanity was a public nuisance since it could be heard at places where the public were. It was, therefore, in public and in hearing of citizens. Compare *Young* v. *State,* 78 Tenn. 165. This drunken cursing was disturbing the peace and quiet of this community to the extent that they called upon the officers for relief. "Generally, any practices tending to disturb the peace and quiet of communities, or corrupt the morals of the people, are indictable as public offenses by the common law." *Parker* v. *State,* 84 Tenn. 476, 478, 1 S. W. 202, 203.

It seems to follow that a public offense was being committed in the presence of these officers while they stood in the public road. In order to stop the offense and to

apprehend the offender they were authorized to go to the place where they observed the offense being committed, which was in the home of Cartwright.

■■ As they thus lawfully entered the home these officers "smelled a strong odor of whiskey coming from the house". This justified the search of the house when their entry had been completed. "Where an officer's sense of smell apprises him that whiskey is being manufactured, he is justified in making a search without procuring a warrant". *Massa* v. *State,* 159 Tenn. 428, 430, 19 S. W. (2d) 248, 249. Of course, this reason would apply to the possession as well as to the manufacture of whiskey.

The decisions to which reference has been made are conclusive of the question presented, and makes it necessary to hold that this testimony of the officers as to the finding of this whiskey in the residence of Cartwright was competent.

Affirmed.

All concur.